UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **VICKIE R. GRAY,**<br>Plaintiff,<br>vs.<br>**DTE ENERGY COMPANY RETIREMENT PLAN,** an employee benefit plan, **ESTATE OF RANDY GRAY, and JOY GRAY,**<br>Defendants. | **2:24-CV-11416-TGB-EAS**<br>HON. TERRENCE G. BERG<br>**ORDER GRANTING DEFENDANT DTE ENERGY COMPANY RETIREMENT PLAN'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD (ECF NO. 28)**<br>**AND DENYING PLAINTIFF'S CROSS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD (ECF NO. 29)** |

Plaintiff Vickie Gray was married to Randy Gray, now deceased, for over 25 years until they divorced in 2006. As part of the divorce judgment, Plaintiff was awarded surviving spouse benefits from Randy Gray's DTE Energy Company Retirement Plan ("the Plan"). However, neither Randy nor Vickie Gray completed or submitted a Qualified Domestic Relations Order ("QDRO") to the Plan as required to preserve Vickie Gray's rights under the divorce decree. Randy Gray remarried in 2007 and in March of 2011, Randy and his new wife Joy submitted a Pension Election Authorization Form assigning the surviving spouse benefits to Joy, and certifying (apparently falsely) that Randy was never involved in a divorce

that impacted his pension benefits. Vickie Gray, as Plaintiff, filed this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, because Defendant DTE Energy Company Retirement Plan has denied her surviving spouse benefits, which she contends were awarded to her through a divorce judgment. Plaintiff has also brought suit against Defendants Joy Gray and the Estate of Randy Gray for fraud and misrepresentation and a declaratory judgment in connection with the denial of those surviving spouse benefits.

Now before the Court are Plaintiff's and the Plan's Cross Motions for Judgment on the Administrative Record, ECF Nos. 28, 29, to which responses have been filed, ECF Nos. 30, 31. Pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the motions will be evaluated based on the briefs and the administrative record. For the reasons set forth below, Defendant DTE Energy Company Retirement Plan's motion will be **GRANTED** and Plaintiff Vickie Gray's motion will be **DENIED**.

## I. BACKGROUND

### A. The Grays' Marriages and Divorce

Plaintiff and Randy Gray were married on December 1, 1979, and divorced on January 6, 2006. Administrative Record, ECF No. 27, PageID.176, 461–71. The January 6, 2006 Judgment of Divorce, entered by the Wayne County Circuit Court, stated that Plaintiff had certain rights to Randy Gray's pension, annuity, and retirement benefits. *Id.*

PageID.465. Plaintiff was awarded "Fifty Percent (50%) of the marital portion of Defendant's [Randy Gray's] interest in his DTE Energy Company Retirement Plan … including but not limited to pre-retirement and post-retirement benefits, surviving benefits and cost of living increases." *Id.* The Judgment of Divorce further ordered that "the division of the retirement benefits shall be accomplished by a Qualified Domestic Relations Order [("QDRO")]," to be prepared by Divorce Solutions, LLC. *Id.* PageID.465–66. "A QDRO is a type of domestic relations order that creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits payable with respect to a participant under a plan." *Boggs v. Boggs*, 520 U.S. 833, 846 (1997) (citing 29 U.S.C. § 1056(d)(3)(B)(i)). However, Plaintiff and Randy Gray failed to complete and submit a QDRO to the Plan at that time.

On April 3, 2007, Randy Gray married Joy Gray. ECF No. 27, PageID.162. On March 1, 2011, while married to Joy Gray, Randy Gray began receiving retirement benefits. Randy Gray submitted a Pension Election Authorization Form to the Plan, *id.* PageID.164–65, that was executed by Joy Gray on behalf of Randy Gray under authority granted by Letters of Guardianship and Conservatorship. *Id.* PageID.166, 168, 169. In that Form, Mr. Gray certified that:

- "I'm married and that JOY R. GRAY is my spouse on May 1, 2011";

- "I am not currently and have never been involved in a divorce that impacted my pension benefits";
- "I've chosen the 75% Joint and Survivor [benefits] to begin on March 1, 2011";
- "I understand my beneficiary is JOY R. GRAY and will receive upon my death $1,212.27 per month."

*Id.* PageID.164–65.

Randy Gray did not refer to his divorce in that form and did not disclose to the Plan any obligations that he had to Plaintiff regarding his retirement benefits. *See id.* The Plan asserts that it therefore had no notice of the Judgment of Divorce or any obligations towards Plaintiff. ECF No. 28, PageID.574. In addition, no QDRO had been prepared or received at that time.

**B. Plaintiff and Randy Gray Submit a QDRO on October 9, 2015**

On October 9, 2015, more than nine years after Plaintiff's and Randy Gray's divorce and more than four years after Randy Gray began receiving retirement benefits from the Plan, Plaintiff and Randy Gray entered a QDRO with the Wayne County Circuit Court. ECF No. 27, PageID.427–32. The QDRO was then submitted to the Plan's third-party administrator, which determined that the QDRO satisfied the Plan's QDRO requirements. *Id.* PageID.419–26. As a result, the "alternative payee," Plaintiff Vicki Gray, was awarded "Forty-Eight (48%) of the Participant's [Randy Gray's] Retirement Benefit under the Plan." *Id.*

PageID.429; *see also id.* PageID.419–20. The QDRO stated that it should not be construed "[t]o provide any type or form of benefit option not otherwise provided under the terms of the Plan." *Id.* PageID.430.

Pursuant to the QDRO, Plaintiff began receiving her assigned portion of Randy Gray's retirement benefits each month. *Id.* PageID.453, 496. On January 4, 2018, Randy Gray died. *Id.* At that time, Plaintiff stopped receiving benefits because Randy Gray's benefits ended upon his death. *Id.* Beginning in February 2018, Joy Gray began receiving her 75% surviving spouse benefit. *Id.*

### C. Relevant Plan Terms

#### 1. Benefit Elections and QDROs

The Plan contains default, or automatic, options as to how a participant will receive their benefit. *Id.* PageID.284–93. The Plan also allows a participant to elect an optional form of benefit, such as diverting a percentage of what the participant will receive during their lifetime instead to funds that a beneficiary will receive as a survivor. To choose an optional benefit, a participant must complete their election within the time period articulated in the Plan, generally 90 days before the benefit commencement date. *Id.* PageID.293–94 (citing Plan § 7.05(b)(2)).

The Plan also provides the Plan Administrator and Benefit Plan Administration Committee the authority to create and enforce rules that must be followed by participants and their beneficiaries:

> **Section 9.01** **<u>Plan Administrator and Benefit Plan Administration Committee</u>.** … The Benefit Plan Administration Committee has the powers and duties as may be necessary to discharge its functions under the Plan, including, but not limited to the following:
>
> ***
>
> > **(c) <u>Procedures</u>:** To prescribe procedures to be followed by Participants or Beneficiaries filing applications for Benefits, and to establish procedures for the administration of qualified domestic relations orders.

*Id.* PageID.311.

Exercising this authority, the Plan established and follows QDRO procedures. *Id.* PageID.136–61. Section XI of the QDRO procedures limits the benefits payable to beneficiaries depending on when the participant starts receiving benefits and when a QDRO is received by the Plan's Qualified Order Center. As relevant here:

> If the participant has already started receiving payments at the time the initial [QRDO] order is received by the Qualified Order Center, the assigned benefit *may only be a Shared Payment benefit payable over the participant's lifetime.*

*Id.* PageID.157 (emphasis added). Additionally, the timing of the "alternate payee's" benefit (i.e., Plaintiff's), is limited to the life of the participant (i.e., Randy Gray):

> The alternate payee's benefit *will cease* upon the earlier of *the death of the participant* or the death of the alternate payee. Payments to the alternate payee following the death of the participant will be contingent upon the form of payment chosen by the participant.

*Id.* PageID.159 (emphases added). The procedures further limit the alternate payee's ability to receive survivor benefits depending on when the QDRO is received as compared to when the participant begins receiving benefits:

> If the participant is already in payment status at the time the initial order is received by the Qualified Order Center, *the alternate payee can't be awarded postretirement survivor benefits*. Rather, the alternate payee's entitlement to a benefit following the death of the participant is contingent upon the form of payment chosen by the participant....

*Id.* PageID.159 (emphasis added). On the other hand, the alternate payee may be awarded survivor benefits only "if the order is received *before* the participant starts receiving benefits." *Id.* (emphasis added).

The QDRO procedures also contain provisions that result in a "restriction" on a participant's receipt of a benefit. *Id.* PageID.146–47. For example, if a draft QDRO is received, the Plan Administrator will place a hold on the benefits for a maximum period of 18 months. *Id.*

#### 2. Claim Procedures

The Plan provides a process for participants or beneficiaries to submit claims to obtain benefits. *Id.* PageID.312–14. It states, in relevant part:

> **Section 9.02 Claims Procedures.** .... For all claims filed after December 31, 2001:
>
> **(a) Initial Claims**.

**(1)** The Plan Administrator has *full discretion* to make all determinations as to the right of any person to receive a benefit and as to other matters affecting benefits, and will apply Plan provisions consistently with respect to similarly situated Employees, Participants, Beneficiaries, and other persons ("claimants"). Each claimant has the right to submit a claim with respect to any benefit sought under the Plan, or with respect to the claimant's eligibility, vesting, or other factor affecting benefits, either personally or through a representative duly authorized in writing. All claims must be submitted in writing or electronically to the Plan Administrator and must be accompanied by information and documentation the Plan Administrator determines is required to make a ruling on the claim.

*Id.* PageID.312 (emphasis added).

The claims procedure requires that claims be timely submitted:

**(b) <u>Limitation of Claims Procedure</u>.** Any claim under this claims procedure *must be submitted within 12 months* from the earlier of:

**(1)** the date on which the claimant learned of facts sufficient to enable the claimant to formulate the claim; or

**(2)** the date on which the claimant reasonably should have been expected to learn of facts sufficient to enable the claimant to formulate the claim.

*Id.* (emphasis added). The Plan states that the Committee "will not" entertain untimely claims:

**(e) <u>Time Limits Affecting Jurisdiction</u>.** The Benefit Plan Administration Committee will not entertain a claim or a request for review unless it is filed timely in the manner

> specified by (a), (b) and (d) above, which is a condition precedent to obtaining review by the Benefit Plan Administration Committee.

*Id.* PageID.314.

When a claim is denied, claimants have a right to appeal the denial decision. *Id.* PageID.312–13. Decisions by the Committee are "final and binding." *Id.* PageID.314. Lawsuits challenging a benefit denial decision must be filed within one year from the date of the final adverse determination. *Id.* PageID.314.

The Plan's Summary Plan Description ("SPD") also describes the claims procedure, including the one-year limitation on filing claims. *Id.* PageID.552–54. It confirms that the Plan Administrator "has *complete discretionary authority*," including "the discretion to make any findings of fact" and "to interpret or construe ambiguous, unclear or implied (but omitted) terms." *Id.* PageID.549 (emphasis added). It explains that "[t]his includes the fullest discretionary authority contemplated" by the Supreme Court in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), and that this authority "is absolute." *Id.*

**3. Plaintiff's Claim for Benefits and Appeal**

On December 7, 2022, almost five years after Randy Gray's death, Plaintiff's attorney submitted a demand letter to the Plan for payment on behalf of Plaintiff for the resumption of benefit payments, claiming that "DTE Energy has been withholding payments to Ms. Gray over the past few years." *Id.* PageID.445–46. Plaintiff enclosed a Stipulated Order

entered in the Oakland County Probate Court dated December 6, 2022, purporting to allege that Plaintiff was wrongfully denied surviving spouse benefits under the QDRO. *Id.* PageID.447–51 (further providing that "[n]othing in this Order shall be construed so as to reduce the amount of survivor benefit awarded to Joy Gray under the terms of the QRDO" and that "Joy Gray's benefit is not to be affected by the terms of this Order."). The Plan asserts that it was not a party to the probate court hearing giving rise to the Stipulated Order, nor was it provided notice of the hearing or otherwise allowed to participate in the probate court proceeding. *See id.*

The Plan treated the December 7, 2022 letter as a claim for benefits under the terms of the Plan. On February 7, 2023, the Plan Administrator communicated the claim denial to Plaintiff. *Id.* PageID.452–56. The denial letter recited the relevant Plan provisions, explained that the Plan requires all benefit claims to be submitted within 12 months, and that Plaintiff's claim therefore was untimely, stating:

> The Plan's terms require all claims for benefits to be submitted in writing within 12 months of the earlier of the date the claimant knew of facts sufficient to formulate the claim and the date the claimant could reasonably been expected to learn of facts sufficient to formulate the claim. When Vickie Gray stopped receiving Plan benefits in February 2018, Vickie Gray knew, or reasonably should have known, of the facts sufficient to formulate a claim for surviving spouse benefits from the Plan. Your December 7, 2022 letter making that claim on her behalf was submitted

> more than 12 months after the date Vickie Gray knew, or reasonably should have known, she had a claim for surviving spouse benefits from the Plan. Because her claim was not submitted by the deadline specified by the Plan, she is not eligible to bring a claim for benefits.

*Id.* PageID.455.

The denial letter went on to state that even if Plaintiff had timely submitted a claim, her claim for surviving spouse benefits nevertheless would have been denied. *Id.* It explained that the Plan's QDRO procedures "clearly state that a QDRO first submitted *after* the participant begins to receive Plan benefits can only provide an alternate payee with a portion of the participant's Plan benefits *during the participant's lifetime*." *Id.* (emphases added). Plaintiff did receive a portion of Randy Gray's benefits during his lifetime. The denial letter added that the alternative payee (here, Plaintiff), "cannot be awarded postretirement survivor benefits through a QDRO first submitted *after* the participant begins to receive Plan benefits." *Id.* (emphasis added).

Because Randy Gray began receiving Plan benefits in 2011,[1] and a draft QDRO was not received by the Plan until June 2014, "the QDRO could not award Vickie Gray any postretirement survivor benefits." *Id.* Additionally, under the form of benefit chosen by Randy Gray (the 75%

---

[1] The denial letter refers to May 2010 as the benefit commencement date. *Id.* PageID.455. The Plan asserts this appears to be a typographical error because the Pension Election Authorization Form was signed in March 2011. *See id.* PageID.166. Plaintiff does not dispute this in her motion or response.

Joint and Survivor Annuity form of benefit), "all benefits to or on behalf of Randy Gray ceased upon his death" and at that time, Joy Gray's right to survivor benefits, which "were vested as of the date Randy Gray's benefit payments began [in March 2011]," began and "Joy Gray's rights to those benefits could not be assigned to Vickie Gray under the QDRO." *Id.* Thus, Plaintiff's claim "for survivor benefits from the Plan would have been denied" even if she had filed a timely claim. *Id.*

On April 10, 2023, Plaintiff appealed the claim denial. *Id.* PageID.457–59. Plaintiff asserted that Randy and Joy Gray submitted false or fraudulent statements to the Plan. *Id.* However, the appeal did not address Plaintiff's failure to file a timely claim with the Plan, and it does not dispute that the Plan did not receive the QDRO until after Randy Gray had already been receiving Plan benefits. *See id.*

On May 12, 2023, the Committee met, considered, and denied Plaintiff's appeal. *Id.* PageID.488–90; 491–94. On May 30, 2023, the Committee communicated the appeal denial in a detailed letter to Plaintiff. *Id.* PageID.495–501. The letter explained that ERISA requires that the Plan be administered in compliance with its terms and that the Plan required all claims for benefits to be submitted within 12 months. *Id.* PageID.499. The letter stated that "[w]hen Vickie Gray stopped receiving Plan benefits in February 2018, Vickie Gray knew, or reasonably should have known, of the facts sufficient to formulate a claim for surviving spouse benefits from the Plan." *Id.* Because the December

7, 2022 letter claim for surviving spouse benefits was submitted more than 12 months after Plaintiff stopped receiving benefits, her claim was untimely. *Id.* The letter further explained that Plaintiff "did not identify any additional information indicating that Vickie Gray did not know, or reasonably could not have known, that she would not be receiving surviving spouse benefits from the Plan until December 2021, 12 months before a claim was submitted on her behalf." *Id.* Instead, the evidence that Plaintiff submitted actually confirmed that she "knew of facts sufficient to formulate a claim for surviving spouse benefits by May 8, 2018 at the latest." *Id.* PageID.499–500.

Next, the letter explained that Randy Gray's fraudulent certification that he was not involved in a divorce was not an "error" that could be corrected under the Plan's terms. *Id.* PageID.500. Instead, the Committee determined that the Plan only authorized correction of errors to the extent information on the certification conflicted with Randy Gray's benefit as defined by the Plan. *Id.* At the time Randy Gray's benefit commenced in 2011, "the Plan had neither received nor approved the QDRO" and, as such, "the QDRO did not at that time define Randy Gray's benefit." *Id.* "Because Randy Gray's Plan benefit payments had already commenced at the time the Plan had received and approved the QDRO, the QDRO procedures … clearly restricted Vickie Gray to only receiving a portion of the Plan benefit Randy Gray received during his

lifetime, and clearly prohibited her from receiving a surviving spouse benefit." *Id.*

The letter also explained that the later existence of the QDRO did not create an "error" that could be corrected. *Id.* This is because the QDRO expressly did not require the Plan to provide "any type or form of benefit option not otherwise provided under the terms of the Plan." *Id.* And the Plan prohibited any changes to the optional form of benefit after benefits commenced. *Id.* Thus, the QDRO could not require modification of previously elected benefits. *Id.*

Finally, the letter explained that even if the Plan had been notified of Randy Gray's divorce from Vickie Gray at the time of the benefit election in March 2011, at most there would have been an 18-month restriction on benefits that would have expired by September 2012. *Id.* PageID.501. Because a QDRO was not received by September 2012, "the Plan would have been required to release the restrictions and retroactively implement Randy Gray's election of the 75% Joint and Survivor Annuity with Joy Gray as his beneficiary" by that date, well before Plaintiff submitted a draft QDRO to the Plan. *Id.* In other words, unfortunately for Plaintiff, her own actions (or inactions) in not submitting a QDRO until well after Randy Gray began receiving benefits ultimately caused the Committee to affirm the benefit denial.

**D. Procedural History**

On May 28, 2024, Plaintiff Vickie Gray filed this action against the "Plan", Joy Gray, and the Estate of Randy Gray. ECF No. 1. Plaintiff contends that the Plan wrongfully denied her full surviving spouse benefits in violation of ERISA § 502. *Id*. Count I. She also asserts a claim against Joy Gray and the Estate of Randy Gray for fraud and misrepresentation. *Id*. Count III. She asserts that Joy Gray's fraudulent statement on the Pension Election Authorization Form resulted in Joy Gray receiving lifelong surviving spouse benefits instead of her, and that she is entitled to those benefits. *Id*. ¶¶ 47–48. Finally, Vickie Gray "request[s] a declaratory judgment declaring that [she] is entitled to all rights and full surviving spouse benefits of Randy Gray," and she "seek[s] a decision pursuant to section 502(a) of ERISA following an adverse benefit determination." *Id*. ¶¶ 39–40.

The Plan was served with the Complaint and filed an Answer to the Complaint, with affirmative defenses. ECF No. 7. The Plan and Plaintiff have now filed cross Motions for Judgment on the Administrative Record, ECF Nos. 28, 29, followed by responses to each motion. ECF Nos. 30, 31.

Defendants Joy Gray and the Estate of Randy Gray, however, have failed to answer or otherwise respond to this action and a Clerk's Entry of Default was entered against each of them on January 23, 2025. ECF Nos. 19, 20. Plaintiff filed a motion for default judgment against Joy Gray and the Estate of Randy Gray seeking "a decision pursuant to section

502(a) of ERISA following an adverse benefit determination" "declaring that Vickie Gray is entitled to all rights and full surviving spouse benefits of Randy Gray," and that Joy Gray's "fraudulent actions resulted in her receiving lifelong spousal benefits" but that "Vickie Gray is entitled to the surviving spouse benefits of Randy Gray and not Joy Gray." ECF No. 24. The Court denied that motion without prejudice pending a ruling on the parties' cross Motions for Judgment on the Administrative Record, to avoid the possibility of inconsistent verdicts. ECF No. 32.

## II. STANDARD OF REVIEW

ERISA was enacted to "promote the interests of employees and their beneficiaries in employee benefit plans" and "protect contractually defined benefits[.]" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989). ERISA creates a right of action by a participant or beneficiary of a covered pension plan under § 502(a)(1)(B) of ERISA to recover benefits due under the plan. 29 U.S.C. § 1132(a)(1)(B). The Court's review is limited to the administrative record. *See Tranbarger v. Lincoln Life & Annuity Co. of N.Y.*, 68 F.4th 311, 314 (6th Cir. 2023).

The Supreme Court has held that generally "a denial of benefits challenged under section 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. Here, the parties are in agreement that the Plan vests the administrator with discretionary

authority to determine eligibility for benefits or otherwise construe the terms of the plan. *See* ECF No. 28, PageID.585; ECF No. 29, PageID.604–05. As such, the Court will review the Plan's decision under a "unique form of 'arbitrary-and-capricious' review," more properly referred to as "abuse of discretion." *See Goodwin v. Unum Life Ins. Co.*, 137 F4th 582, 588–89 (6th Cir. 2025) (explaining that for a case in this posture, the Court "filters our review through an abuse of discretion standard, not arbitrariness review."). The Sixth Circuit has explained that circuit caselaw applying "arbitrary and capricious" review under ERISA accords with what is in fact more properly denoted as "abuse of discretion" review, and therefore remains good law. *Id.* at 589 ("[O]ur circuit's ERISA arbitrariness review doesn't buck the Supreme Court's abuse of discretion framework."). The Sixth Circuit's "precedent in this area has been geared toward the reasonableness of plan administrators' decisions." *Id.* This Court will use the "abuse of discretion" standard. *Accord id.* ("[B]ecause labels affect thought, it's best to follow the Supreme Court's lead and call our standard of review what it is: abuse of discretion.").

Under abuse of discretion review in ERISA cases, the court must uphold the plan administrator's decision if "it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Davis v. Hartford Life & Accident Ins. Co.*, 980 F.3d 541, 547 (6th Cir. 2020) (quoting *Jackson v. Blue Cross Blue Shield of Mich. Long*

*Term Disability Program*, 761 F. App'x 539, 543 (6th Cir. 2019)). The administrator's decision is not an abuse of discretion if "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Rothe v. Duke Energy Long Term Disability Plan*, 688 F. App'x 316, 319 (6th Cir. 2017) (quoting *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006)). As the Sixth Circuit has instructed, courts "do not ask whether the plan's decision was the most reasonable decision, or whether it was more reasonable to deny benefits than to grant them … we ask only whether it is *possible* to offer an explanation for the outcome." *Holden v. Unum Life Ins. Co. of Am.*, No. 20-6318, 2021 WL 2836624, at *11 (6th Cir. July 8, 2021) (quoting *Davis By & Through Farmers Bank & Cap. Tr. Co. v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (emphasis in original)). That is, the decision only need be procedurally and substantively reasonable. *Goodwin*, 137 F.4th at 589 (citing *Autran v. Procter & Gamble Health & Long-Term Disability Benefit Plan*, 27 F.4th 405, 411 (6th Cir. 2022)).

At the same time, however, the abuse of discretion standard "does not require [courts] merely to rubber stamp the administrator's decision." *Jordan v. Reliance Standard Life Ins. Co.*, No. 22-5234, 2023 WL 5322417, at *6 (6th Cir. Aug. 18, 2023) (quoting *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004)). It remains the plaintiff's burden to show that the administrator acted unreasonably by denying her claim. *Avery v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 22-1960, 2023 WL

4703865, at *8 (6th Cir. July 24, 2023) (citing *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 343 (6th Cir. 2011)), *cert. denied*, 144 S. Ct. 806 (2024).

## III. DISCUSSION

### A. The Plan Acted Within its Discretion in Denying Plaintiff's Claim for Surviving Spouse Benefits

As stated, Plaintiff bears the burden of proving that she is entitled to benefits under the Plan and that the decision to deny benefits was an abuse of discretion; "otherwise, the decision of the Plan Administrator 'must be sustained as a matter of law.'" *See Farhner*, 645 F.3d at 343. The Plan argues that Plaintiff has failed to meet her burden to show that she is entitled to benefits under the terms of the Plan, and that the Administrator did not abuse its discretion in denying Plaintiff's claim for surviving spouse benefits under the Plan. ECF No. 28, PageID.586–91. The Court agrees.

#### 1. Timeliness

The Plan contains a plain deadline for filing a claim for benefits: "[a]ny claim … must be submitted within 12 months" of either when the claimant "learned of facts sufficient to enable the claimant to formulate the claim" or "reasonably should have been expected to learn of [such] facts…." ECF No. 27, PageID.312. Plaintiff admits that following the January 4, 2018 death of Randy Gray, she became aware that her benefits ceased in February 2018. Compl. ¶¶ 21, 23, ECF No. 1; ECF No.

29, PageID.601; ECF No. 27, PageID.448, 474. The administrator found in denying Plaintiff's claim for benefits that "[w]hen [Plaintiff] stopped receiving Plan benefits in February 2018, [she] knew, or reasonably should have known, of the facts sufficient to formulate a claim for surviving spouse benefits from the Plan." ECF No. 27, PageID.455. This is a reasonable determination. *See Morrison v. Marsh & McLennan Cos., Inc.*, 439 F.3d 295, 302 (6th Cir. 2006) ( "[W]hen a fiduciary gives a claimant clear and unequivocal repudiation of benefits that alone is adequate to commence accrual, regardless of whether the repudiation is formal or not.") (collecting cases); *Redmon v. Sud-Chemie Inc. Retirement Plan for Union Emps.*, 547 F.3d 531, 539 (6th Cir. 2008) (finding the cessation of benefits payments "was just as clear and unequivocal [a repudiation of [] survivor benefits] as sending a letter stating that [claimant's] benefits had been denied").

In *Redmon v. Sud-Chemie Inc. Retirement Plan for Union Employees*, a widow sued challenging the failure of her deceased husband's pension plan to advise her of the consequences of consenting to her husband's election of a "'straight life annuity,' thereby waiving [the widow's] right to receive survivor benefits" if her husband predeceased her, rather than a "qualified joint survivor annuity" (which offered higher monthly payments during the husband's lifetime) when he retired. 547 F.3d at 533. Six years later, she submitted a claim for benefits, which was denied as untimely. *Id.* at 533–34. Applying *Morrison*, the Sixth Circuit

reasoned that the pension plan's "cessation of payments" upon the husband's death constituted a repudiation that was "clear and unequivocal." *Id.* at 539. The court also rejected the widow's argument that her claim did not accrue until she made a formal request for benefits that was denied, *i.e.*, that she had to follow the administrative procedure. *Id.* at 539–40 (finding plaintiff's argument "turns the exhaustion requirement on its head" because, if she was correct, "her claim might never accrue and the statute of limitations would never expire").

The same holds true here, and the Court finds that the Plan Administrator reasonably denied Plaintiff's claim for benefits as time-barred. Plaintiff's unsupported contention in her motion that she did not know *why* the pension benefits stopped is a non-starter because the issue is whether she knew they had stopped, not whether she knew the reason why, and she fails to explain why she waited four years to assert a claim for those benefits. It is undisputed that Plaintiff was aware of the cessation of benefit payments in February 2018 but she did not assert a claim for those benefits until over four years later, on December 7, 2022. Her claim for benefits was reasonably and properly denied as untimely under the express terms of the Plan, and her ERISA claim against the Plan must therefore be **DISMISSED** as time-barred.

**2. The Plan Terms Bar Plaintiff's Claim for Benefits**

The Plan argues that the Administrator further reasonably concluded that even if Plaintiff's claim had been timely submitted, her

claim for surviving spouse benefits nevertheless would have been denied because Plaintiff received all the benefits to which she is entitled under the Plan, and she is not entitled to surviving spouse benefits under the Plan's terms. ECF No. 28, PageID.587–90. As the Supreme Court has stated, "[t]he plan, in short, is at the center of ERISA," and "once a plan is established, the administrator's duty is to see that the plan is maintained pursuant to that written instrument." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013) (citation modified). ERISA § 502(a)(1)(B) authorizes a plan participant to bring suit "to recover benefits due to him *under the terms of his plan,* to enforce his rights *under the terms of the plan,* or to clarify his rights to future benefits *under the terms of the plan.*" 29 U.S.C. § 1132(a)(1)(B) (emphases added).

Under the Plan's procedures in this case, an alternate payee (here, Plaintiff) cannot be awarded postretirement survivor benefits through a QDRO first submitted *after* the participant (here, Randy Gray) begins to receive Plan benefits. ECF No. 27, PageID.157. Instead, "[i]f the participant has already started receiving payments at the time the initial order is received by the Qualified Order Center, the assigned benefit may only be a Shared Payment benefit payable over the participant's lifetime." *Id.*

When he retired in March 2011, Randy Gray elected an optional form of benefit that provided him with benefits during his lifetime, and his then-spouse Joy Gray with a vested benefit upon his death. ECF No.

27, PageID.165–66. *See Singleton v. Singleton*, 290 F. Supp. 2d 767, 770 (W.D. Ky. 2003) ("Under ERISA, surviving spouse benefits vest in the participant's *current spouse* on the date when the participant retires, *unless* a QDRO has been entered in favor of the previous spouse.") (emphases added) (citing *Hopkins v. AT&T Global Info. Sols. Co.*, 105 F.3d 153, 157 (4th Cir. 1997)). "After retirement, the participant cannot change the form of benefit, even with the current spouse's consent." *Hopkins*, 105 F.3d at 157. At the time Randy Gray retired and began receiving benefits, there was no QDRO. Randy Gray was married to Joy Gray at that time and the surviving spouse benefits therefore vested in her. *See Singleton*, 290 F. Supp. 2d at 770–71 (citing *Hopkins*, 105 F.3d at 157).

Although Plaintiff's and Randy Gray's January 6, 2006 Judgment of Divorce awarded Plaintiff 50% of Randy Gray's retirement benefits, including "pre-retirement and post-retirement benefits, surviving benefits, and cost of living increases," ECF No. 27, PageID.465, it also ordered the division of those retirements benefits through a QDRO. *Id.* PageID.465–66. Plaintiff was required to comply with ERISA and the terms of the Plan to receive these benefits. *See Mack v. Mack*, No. 08-1109, 2009 WL 910681, at *3 (E.D. Mich. Apr. 1, 2009) (Battani, J.) ("[A] divorce decree purporting to determine the proper beneficiary of an ERISA plan is preempted under 29 U.S.C. § 1144(a)) (citing *Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d 415, 421 (6th Cir. 1997)). "Under ERISA,

where a pension plan beneficiary has remarried, a former spouse may be treated as a surviving spouse, eligible to receive surviving spouse benefits, only in very limited circumstances. A current spouse can be replaced by the former spouse only pursuant to a QDRO." *Singleton*, 290 F. Supp. 2d at 770. "Each particular plan has its own procedure for validating a QDRO." *Id.*

Plaintiff and Randy Gray, however, did not enter a QDRO with the Wayne County Circuit Court and submit a copy of that QDRO to the Plan at the time their divorce was finalized. If they had done so, as stated above, the Plan would have allowed Vickie Gray to receive Randy Gray's death benefits, instead of Joy Gray, as contemplated in the QDRO. But Randy Gray did not submit a QDRO until October 2015, over nine years after the entry of the Judgment of Divorce and four years after Randy Gray began receiving retirement benefits from the Plan. ECF No. 27, PageID.419–26, 427–32. That October 2015 QDRO provided Plaintiff with a 48% interest in Randy Gray's retirement benefit only—not any interest in a death benefit. *See id.* PageID.429. Because Randy Gray had already stated receiving his retirement benefits at that time, and the surviving spouse benefits had vested in Joy Gray, the only benefit Plaintiff was eligible to receive per the terms of the Plan was a "Shared Payment benefit payable over the participant's [Randy Gray's] lifetime" which would terminate "upon the earlier of the death of the participant [Randy Gray] or the death of the alternate payee [Plaintiff]." *Id.*

PageID.157, 159. The Plan terms provided that the "alternate payee can't be awarded postretirement survivor benefits." *Id.*

The October 19, 2015 Domestic Relations Order Qualification Attachment from the Administrator similarly stated that Plaintiff's benefits "will be calculated and payable for [Randy Gray's] lifetime," and that she "will receive a portion of [Randy Gray's] monthly benefit as it's paid to [him]" and she "is not eligible to choose a form of payment." *Id.* PageID.420. Therefore, Plaintiff's late submission of the QDRO, taking place as it did after Randy Gray had already begun receiving his retirement benefits, made it impossible, under the precise terms of the Plan, for Vickie Gray to receive survivor benefits after his death.

Plaintiff asserts that the QDRO provides that "the alternate payee will be entitled to receive benefits following the death of the participant." ECF No. 29, PageID.601 (citing ECF No. 27, PageID.429). However, she omits the remainder of that sentence, which qualifies the benefits available by stating "to the extent provided under the form of payment in which benefits are currently being paid to the Participant." ECF No. 27, PageID.429. The QDRO's own terms do not allow either Randy Gray's election or the beneficiary of Randy Gray's Plan benefit to be changed after his benefit payments commenced. *See id.* PageID.429–30.

Put simply, Plaintiff's failure to timely submit a QDRO, before Randy Gray began receiving retirement benefits, is fatal to her claim for surviving spouse benefits.

**3. Alleged Fraudulent Activity**

Plaintiff contends that she believed that Randy Gray's and Joy Gray's fraudulent statements in the Pension Election Authorization Form would be corrected by the Plan. ECF No. 29, PageID.605–06. She states that the certification in the Authorization Form "reserved the right to correct errors" and she faults the Plan for not providing "information" to her on how to correct the error. *Id.* The Plan argues that Plaintiff fails to cite any case law supporting her position that the Plan was required to provide advice to Plaintiff regarding how the errors could be corrected, and that Randy Gray's and Joy Gray's alleged fraudulent activity cannot override the terms of the Plan. ECF No. 28, PageID.590–91.

Plaintiff has failed to present any evidence in the record supporting a contention that the Plan "misled" her regarding the ability to correct erroneous statements. Rather, she alleges that the misleading behavior was committed by Randy and Joy Gray. An ERISA plan must be interpreted according to its written terms. 29 U.S.C. § 1102(a)(1); *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 712 (6th Cir. 2000) (courts give effect to the unambiguous terms of the plan). Plaintiff fails to provide any support for her contention that the Plan can retroactively modify Randy Gray's Pension Election Authorization Form.

The Committee explained in its May 30, 2023 appeal denial letter that the only "error" that can be corrected under the terms of the Plan is an error that "conflicts with the benefits defined by [the Plan]" at the time

the Form is executed. ECF No. 27, PageID.500 (citing ECF No. 27, PageID.166). The Plan had not received or approved the QDRO at the time the Form was executed and Randy Gray began receiving retirement benefits in March 2011. Thus the QDRO did not define Randy Gray's benefit. And because Randy Gray's benefit payments had already commenced at the time the Plan ultimately received and approved the QDRO, the QDRO procedures restricted Plaintiff to only receiving a portion of the Plan benefit Randy Gray received during his lifetime, and expressly prohibited from her receiving a surviving spouse benefit (which had previously vested in Joy Gray). *Id.* Thus, the "error" in Randy Gray's Pension Election Authorization Form was not an "error" that conflicted with his benefit as defined by the Plan at the time the Form was executed. *Id.* Because no QDRO had been submitted or approved at the time, Plaintiff was not entitled to surviving spouse benefits. Plaintiff failed to address, much less challenge, this conclusion or argue that it was an abuse of discretion

As the Committee further explained, "even if the Plan had been notified of the divorce in March 2011, when Randy Gray's Pension Election Authorization Form was executed," the Plan provided for an 18-month restriction on benefits after receiving a court order, which "would have expired in September 2012," well before the Plan received the QRDO in this case, and the Plan would have been required to release the restrictions "and retroactively implement Randy Gray's election of the

75% Joint and Survivor Annuity with Joy Gray as his beneficiary" *Id.* Thus, it was Plaintiff's failure to submit a QRDO until well after Randy Gray began receiving benefits that led to the benefits denial determination.

**B. Plaintiff's Unpled Section 503 claim**

Plaintiff's Complaint asserts only a denial of benefits claim against the Plan pursuant to ERISA § 502. ECF No. 1, PageID.4–5. However, for the first time in her motion, Plaintiff argues that the Plan failed to comply with ERISA § 503's notice requirements and did not provide her with the requisite notice of the denial of her benefits until February 7, 2023. ECF No. 29, PageID.606–08. Because it was not included in the Complaint, the Court could refuse to consider this new claim for this reason alone. *See Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788–89 (6th Cir. 2005) (district court did not err in refusing to consider the merits of an unpled claim asserted for the first time in a response to a motion for summary judgment); *see also Rafferty v. Trumbull Cnty., Ohio*, 758 F. App'x 425, 429 (6th Cir 2018) (collecting cases stating the same).

But even if the Court considers this unpled claim, it finds that it must be rejected because the Plan complied with ERISA § 503. Section 503 provides that plans must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in

a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). "Plans are not required to comply with the conditions under § 503 and related regulations prior to denying a participant or a beneficiary's claim for benefits." *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1237 (7th Cir. 1997) (citation modified) ("[A]gree[ing] with the district court that it would be quite odd to require a plan to 'supply notice of the procedure for reviewing a denial of benefits … before [the plan] has even made a final decision.'").

Plaintiff received her assigned portion of Randy Gray's pension benefits each month until February 2018, following Randy Gray's death in January 2018. ECF No. 27, PageID.448, 457. She admits that she "was informed upon the death of Randy Gray in January 2018 that she would no longer be receiving surviving spouse benefits[.]" *Id.* PageID.474. However, she did not submit a claim for benefits under December 7, 2022. *Id.* PageID.445–46. Plaintiff offers no evidence that she submitted any other claim for benefits to the Plan besides the December 7, 2022 letter from her counsel claiming that Plaintiff is entitled to surviving spouse benefits. She admits that, in response to the December 7th letter, the Plan then provided "the requisite denial notice under 29 U.S.C. § 1133 [in] February 2023." ECF No. 29, PageID.607. That letter described the reasons for the benefit denial, including the factual and procedural history of the benefit claim, an explanation of the applicable plan terms, and a detailed explanation of the reasons for denying the claim. ECF No.

27, PageID.452–56. The letter also detailed Plaintiff's appeal rights under the Plan. *See id.* PageID.456. Plaintiff did appeal the Plan's benefit denial decision on April 10, 2023, *id.* PageID.457–59, and the Committee denied that appeal in a detailed letter on May 30, 2023. *Id.* PageID.495–501.

Accordingly, Plaintiff received the specific reasons for the denial of benefits after she submitted a claim for benefits. The Plan therefore complied with ERISA's requirements, including those in § 503, and Plaintiff fails to state a claim for violation of ERISA § 503.

### C. Plaintiff's Claims Against Joy Gray and the Estate of Randy Gray

Plaintiff Vickie Gray has also asserted claims against Defendants Joy Gray and the Estate of Randy Gray for fraud and misrepresentation and a declaratory judgment in connection with the Plan's denial of the surviving spouse benefits. ECF No. 1, PageID.6–8. Defendants Joy Gray and the Estate of Randy Gray have not appeared or otherwise defended themselves in this action. Plaintiff obtained a clerk's entry of default as to each Defendant, ECF Nos. 19, 20, and moved for entry of default judgment against the two Defendants. ECF No. 24.

On March 23, 2026, the Court entered an Order denying without prejudice Plaintiff's motion for default judgment against Defendants Joy Gray and the Estate of Randy Gray. ECF No. 32. The Court explained:

> Plaintiff Vickie Gray requests a default judgment against Defendants Joy Gray and the Estate of Randy Gray, seeking "a decision pursuant to section 502(a) of ERISA following an adverse benefit determination" "declaring that Vickie Gray is entitled to all rights and full surviving spouse benefits of Randy Gray," and that Joy Gray's "fraudulent actions resulted in her receiving lifelong spousal benefits" but that "Vickie Gray is entitled to the surviving spouse benefits of Randy Gray and not Joy Gray." Complaint ¶¶ 39, 40, 47, 48. Thus, granting Plaintiff's motion would result in a finding, by default, that Vickie Gray is entitled to surviving spousal benefits under the Plan. Yet Plaintiff's and the Plan's cross-motions for judgment on the administrative record have placed the specific issue of whether Vickie Gray is entitled to surviving spouse benefits under the Plan in contention. If the Court were to grant the Plan's motion, thereby concluding that Vickie Gray is not entitled to surviving spousal benefits under the Plan, such a decision would be completely inconsistent with granting default judgment declaring that Vickie Gray is entitled to those benefits. To avoid the possibility of such a result, it is appropriate to delay entry of default judgment as to Defendants Joy Gray and the Estate of Randy Gray until the ERISA claim against the Plan is resolved.

*Id.* PageID.647–48.

That ERISA claim has now been resolved and the Court finds that Plaintiff is not entitled to surviving spouse benefits under the Plan. Accordingly, Plaintiff's claims against Joy Gray and the Estate of Randy Gray will be **DISMISSED.** *See Kimberly v. Coastline Coal Corp.*, No. 87-6199, 857 F.2d 1474 (Table), 1988 WL 93305, at *3 (6th Cir. Sept. 9, 1988) ("When a default is entered against one defendant in a multi-defendant case, the preferred practice is for the court to withhold granting a default

judgment until the trial of the action on the merits against the remaining defendants. If plaintiff loses on the merits, the complaint should then be dismissed against both defaulting and non-defaulting defendants.").

## IV. CONCLUSION

For the reasons stated above, Defendant DTE Energy Company Retirement Plan's Motion for Judgment on the Administrative Record, ECF No. 28, is **GRANTED**, and Plaintiff Vickie Gray's Motion for Judgment on the Administrative Record, ECF No. 29, is **DENIED**, and the Court **AFFIRMS** the administrative decision denying Plaintiff's appeal for surviving spouse benefits.

It is **FURTHER ORDERED** that Plaintiff's claims in Counts II and III of her Complaint against Defendants Joy Gray and the Estate of Randy Gray requesting a declaration "that Vickie Gray is entitled to all rights and full surviving spouse benefits of Randy Gray" and that Plaintiff is entitled to damages as a result of Randy and Joy Gray's alleged false statements on the Pension Election Authorization Form are **DISMISSED WITH PREJUDICE.**

This is final order that closes the case.

**IT IS SO ORDERED.**

Dated: September 8, 2026

/s/Terrence G. Berg
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE